133 So.2d 33

Miles Raymond BAGGETT

v.

STATE.

8 Div. 743.

Court of Appeals of Alabama.

June 30, 1961.

Rehearing Denied Aug. 15, 1961.

Bell, Morring, Richardson & Cleary, Huntsville, for appellant.

MacDonald Gallion, Atty. Gen., and John G. Bookout, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

On May 8, 1960, the body of Randy McCarver, sixteen years of age, was found near his wrecked motorcycle on a highway in Madison County.

After an investigation the appellant was interviewed by investigating officers and admitted that his automobile had collided with the motorcycle on the night of May 8, 1960, at or near the location where the body of McCarver and his wrecked motorcycle had been found.

During his interview with the officers the appellant claimed that one Paul Neese was driving at the time, he and Neese being on a trip to Nashville together. Thereupon the appellant was arrested and placed in jail.

On May 13, 1960, the Grand Jury returned separate indictments charging the appellant and Neese respectively with manslaughter in the first degree and with leaving the scene of an accident.

On May 19, 1960, the appellant was arraigned and entered a plea of not guilty.

On May 21, 1960, the appellant made bond and was released from jail.

On June 15, 1960, the appellant's case came on for trial.

In this connection, the record shows that Mr. Patrick Richardson, an attorney of Huntsville, Alabama, made known to the court that the appellant had attempted to retain his services but had been unable to pay a fee up to the day of trial. Mr. Richardson then made known to the court that he was appearing solely for the purpose of moving for a continuance in the case in order to enable the appellant to make arrangements for his employment and also for additional time in which to prepare the defense.

The record then shows the following:

"The Court: Regardless, you withdraw one way or the other. In other words, you will not represent him now or later?

"Mr. Richardson: If he is able to pay me my fee I will, yes.

"The Court: I will defer ruling on your motion temporarily.

"The Court: I will overrule your motion for a continuance.

"Mr. Richardson: The Defendant reserves an exception to that ruling.

"The Court: Mr. Baggett, you have asked that this case be continued because you say you cannot afford to pay for a lawyer.

"Mr. Baggett: That is one of the reasons, it's not the main reason. The main reason is there hasn't been time for him to prepare to defend me properly.

"The Court: I just want to ask you, in the event that you want to accept one, we will ask an attorney at this Bar to represent you.

"Mr. Baggett: I wouldn't accept an attorney the Court appointed because he wouldn't know enough about the case to defend me properly. I want it to be put in the record to that effect.

"The Court: You will be tried without an attorney then. You were offered an attorney and you refused.

"Mr. Baggett: I'd rather be tried without an attorney because an at-

torney that the Court would appoint don't know enough about the case to properly defend me.

"The Court: You understand that we will give you one?

"Mr. Baggett: Yes.

"The Court: You have your seat over there."

The evidence in this case tends to show that the appellant and Neese worked in Huntsville and shared an apartment together, both having come to Huntsville from Nashville, Tennessee. On the day in question the appellant had gotten up about 8 o'clock and gone to his job as a house painter. Before going to work he bought a pint of vodka which he drank at his job.

About 3 p. m. he and Neese left their work as they had planned to drive to Nashville together. They bought another pint of vodka which they consumed in their apartment, and then proceeded to visit several drinking places in Huntsville, drinking beer at their various stops. About 8 or 8:30 that night they started on their trip to Nashville, taking some beer in the car with them. Both the appellant and Neese testified they were intoxicated at the time of their departure from Huntsville.

Neese appeared as a witness for the State, and according to his testimony, the appellant was driving at the time McCarver's motorcycle was struck from the rear. In regard to the collision, Neese testified as follows:

"A. Well, I was pretty full, I had gone to sleep on the front seat of the car. After so long a time I felt this kind of a bump on the car and I asked Mr. Baggett what had happened. He said, 'I don't know.' Said, 'I believe I hit a motorcycle or a motor scooter or something, it didn't have no light on it.'

"Q. What *hapened* then, if anything? A. I told him, I said, 'Well, let's turn around and go back.' So he finally turned around and we started back, and when we started back I asked him about where it had happened. He was looking and I was too. I never did see anything. And he went up a little bit farther and turned around and started back toward Nashville and we ran out of gas."

As before stated, the appellant claimed that Neese was driving his automobile at the time of the collision and his version was as follows:

" * * * When I went out to the car, on the way out to the car from the apartment, I gave Paul the keys. I got in on the right side of the car. Well, the next thing I remember after that, I would say about three miles south of Hazel Green, two or three miles south of Hazel Green, we passed two cars. And just about a mile, I would estimate about a mile, south of Hazel Green he ran up and hit this motorcycle with the boy on it. And I hollered for Paul to stop three or four times. I said, 'Paul stop, Paul stop, we had better go back and help that boy.' Well, he pulled on down and I finally got him to stop. He pulled on down, pulled off the highway. I stated in my statement it was about a block after the motorcycle had been hit. We had some beer in the car. I got out and throwed the beer out. At that time I didn't know how much it was. I threw it up on an embankment and got back in the car. He turned around and headed back south. Just how far he went I don't know, but I put in my statement approximately two blocks. To the best of my memory that's what it was. Anyway, after he was sure he had passed the scene of the accident he turned around and headed back the other way. * * *"

McCarver's body was not found for some four or five hours after he had been struck. Among the various injuries to his body, was a ruptured spleen, which, according to expert testimony, hemorrhaged and caused

his death. There was also testimony to the effect that had young McCarver received prompt medical attention his injuries probably would not have proven fatal.

The material point argued by counsel for appellant on this appeal is that the court permitted the solicitor to inject illegal and improper evidence during the cross-examination of the appellant.

On one instance the solicitor was permitted, by his questions, to elicit from the appellant the fact that before he had left Nashville to return to Huntsville on the Monday night after the accident on Saturday night, he had picked up a woman in Nashville who had a four year old daughter, and had brought them both back to Huntsville with him where the woman and the daughter had spent the night with him in his apartment.

In another instance, the solicitor was permitted to elicit from the appellant the fact that he had been picked up two weeks before in Franklin County, Tennessee, for driving while intoxicated and that his driver's license had been revoked.

There was other evidence, much of it contained in the appellant's long narration during his appearance as a witness which was immaterial to the issues. This concerned the appellant's continued drinking for several days after the accident.

The two instances which we have set out above produced evidence which was illegal under elementary rules, and should not have been sought by the solicitor, and should not have been permitted by the court.

However, our function is appellate only. The ruling of the trial court was not invoked in any of the above instances in the trial below. In Eatman v. State, 30 Ala.App. 312, 5 So.2d 119, 120, this court was presented with a situation highly similar to the present one and the late Presiding Judge Bricken, wrote as follows:

"Appellant's earnest counsel on the motion for a new trial, informs us in brief that the defendant was unattended by counsel on the main trial which probably accounts for the facts above stated, that is, no ruling of the court was invoked. This fact, of course, is no defense upon a prosecution for crime of this character, and the jurisdiction of this court in a case of this character being appellate only, we are without authority to put the trial court to error in the absence of some adverse and erroneous ruling. Woodson v. State, 170 Ala. 87, 54 So. 191; Le Nier v. State, 19 Ala.App. 227, 96 So. 459; Sasser v. State, 29 Ala.App. 326, 195 So. 564; Graham v. State, 24 Ala.App. 171, 133 So. 57; Vinson v. State, 26 Ala.App. 48, 152 So. 259; Wetzel v. State, 25 Ala.App. 38, 140 So. 620; Thompson v. State, 24 Ala.App. 300, 134 So. 679; Sharp v. State, 21 Ala.App. 262, 107 So. 228."

It must be remembered that the appellant was repeatedly offered the services of counsel by the court. This offer was refused by the appellant unless the court would grant him a continuance. This the court refused to do, and we cannot see any abuse of discretion in the refusal of the continuance. Presumably had the appellant accepted the offer of counsel proffered by the court, objections would have been interposed to the admission of the illegal evidence above mentioned. In this light the appellant himself, by his refusal of counsel, contributed to the present state of the record.

Furthermore, the undisputed evidence establishes fully the appellant's guilt of the offense for which he was convicted. We are not here dealing with the question of a sufficiency of the evidence to support the verdict and judgment of guilty, but rather to the admission of illegal evidence to which no objection was interposed, which illegal evidence was superimposed upon legal evidence abundantly establishing the appellant's guilt.

It should be noted that the appellant throughout had contended that Neese was

driving the appellant's automobile at the time McCarver was struck. On the other hand, Neese testified that the appellant was driving at the time. This contradiction merely raises the question of fact solely within the province of the jury to resolve, and under Neese's testimony the jury was amply justified in concluding that the appellant was the one driving at the time McCarver was hit.

Additionally, the evidence that the appellant and Neese had been together for several hours drinking and visiting various places prior to their planned trip to Nashville, depicts a set of facts clearly within the influence of Berness v. State, 38 Ala. App. 1, 83 So.2d 607, in which we held that where the owner of an automobile permits a person who he knows, or should know, is drunk, to drive his automobile, and sits by the side of the drunken driver, the owner of the automobile so conducting himself may be held responsible for a death resulting from the conduct of the drunken driver as though the owner himself had, with his own hands, guided the wheel.

Affirmed.

### On Rehearing.

■ In brief in support of the application for rehearing, counsel for appellant insists that as a result of appellant not being represented by counsel, he was deprived of due process of law in the trial below.

As pointed out in our original opinion, the appellant was offered counsel in the trial below, but refused to accept such proffered counsel. By his own conduct he has removed himself from the influence of the cases cited by counsel in brief in support of his contention that the appellant's conviction was violative of the 14th Amendment of the Constitution of the United States, and of Article 1, Section 6 of the Constitution of Alabama 1901.

Counsel further argues that the doctrine of Graham v. State, 23 Ala.App. 533, 129 So. 298, necessitates a reversal of this judgment. We do not agree.

■ In the Graham case, supra, the opinion sets forth that the record affirmatively showed that the first knowledge that Graham had that he had been indicted and charged with a felony, was when he was carried from the county jail, together with other prisoners, was arraigned upon indictment and immediately put to trial and convicted of manslaughter in the first degree. The charge grew out of a killing by an automobile. Before entering upon the trial, Graham called attention of the court to the fact that the indictment just returned by the court and just read to him was the first intimation or knowledge he had of the charge against him; that he was unattended by counsel and without witnesses who could testify in his behalf. He begged the court to give him a little time to employ counsel, to prepare his case and to summon witnesses. The court declined this request and Graham was immediately put to trial as aforesaid.

Under these facts, Judge Bricken, speaking for this court, wrote that the court had abused its discretion in forcing the defendant to trial, without counsel, without witnessses, and on such short notice, and that such action resulted in depriving Graham of a fair and impartial trial to which he was entitled under the law.

It is to be noted that in the present case the appellant was arrested and placed in jail on May 8, 1960. On May 13, 1960, he was indicted by the Grand Jury, and was arraigned on said indictment on May 19, 1960, and entered the plea of not guilty. On May 21, 1960, the appellant made bond and was released from jail. His trial was not called until June 15, 1960, some twenty-four days after his arraignment.

The above chronology of the proceedings against the appellant, in addition to his refusal of proffered counsel, is so substantially different from the facts disclosed in the Graham case, supra, as to render the doctrine of the Graham case completely inapplicable.

Application overruled.