## ROBERT PAUL ENGLISH *v.* STATE OF MARYLAND

[No. 159, September Term, 1969.]

*Decided December 12, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*V. Stephen Lassotovitch* and *Louis Peregoff* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with, whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Charles C. Bernstein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

At a court trial in the Criminal Court of Baltimore, Robert Paul English (appellant) was convicted of break-

ing a dwelling house in the daytime with intent to steal. Maryland Code, Art. 27, § 30 (b).

On 5 December 1968, the appearance of "M. L. Kaplan, 620 Munsey Bldg.," privately employed, was filed with the clerk of the court. On 14 March 1969 when the case was called for trial Michael Lee Kaplan, the son of Morris Lee Kaplan, appeared on behalf of appellant. Appellant, in open court, requested a postponement. The transcript of the proceedings reads:

> "MR. ENGLISH: I would like to request my trial be postponed for Mr. Kaplan — Mr. Morris Kaplan originally was handling my case. Now, Michael Kaplan, the son, has it. And he hasn't had a chance to review my case at all. And I would like to have it postponed.
>
> THE COURT: Are you prepared, Mr. Kaplan?
>
> MR. KAPLAN: I am prepared, yes.
>
> THE COURT: He says you are not prepared.
>
> MR. ENGLISH: Today is the first time we met, sir. We met exactly fifteen minutes ago.
>
> MR. KAPLAN: I wouldn't argue that point, Your Honor. It wouldn't make any difference if we had met two weeks ago or fifteen minutes ago.
>
> THE COURT: Whose case is this?
>
> MR. KAPLAN: This is my father's, Your Honor. He is in Towson.
>
> THE COURT: How many times have you seen his father on this case?
>
> MR. ENGLISH: Two times.
>
> THE COURT: Huh?
>
> MR. ENGLISH: Two times.
>
> THE COURT: Well, have you discussed with him this morning this case or have you just seen him right now for the first time?
>
> MR. ENGLISH: About fifteen minutes ago. We had about five minutes.

334

THE COURT: Well, will any further discussions be of any assistance?

MR. KAPLAN: No, Your Honor.

THE COURT: Well, I think we will proceed with the trial. The appearance of M. L. Kaplan is in the case and that means, as far as I am concerned, Michael L. Kaplan. And Mr. Kaplan informs me that he is familiar with the case, he is prepared to try it. And I assume you have discussed this at some length with your father?

MR. KAPLAN: Yes, I talked to him about the circumstances of the case and then I was refreshed by the Defendant this morning.

THE COURT: All right. Well, let's proceed then, gentlemen."

Appellant contends on appeal that the right guaranteed him by Amendment VI to the Constitution of the United States [1] and by Article 21 of the Declaration of Rights, Constitution of Maryland,[2] was violated. He also urges that, in the circumstances, the refusal to postpone the trial denied him due process of law.

## RIGHT TO COUNSEL

It is fundamental today that the constitutional provisions with respect to the right to counsel guarantee that counsel be present at trial, and embrace representation throughout the entire trial in all stages. *Young v. State,* 5 Md. App. 383, 387.[3] While an indigent defen-

---

1. "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." See *Gideon v. Wainwright,* 372 U. S. 335.

2. "That in all criminal prosecutions, every man hath a right * * * to be allowed counsel * * *."

3. See cases cited in *Young,* notes 4 and 5, at 387. The provision in Art. 21 of the Declaration of Rights was intended to do away with the common law rules of England which denied representation by counsel. *Raymond v. State,* 192 Md. 602. *Raymond* held that failure or refusal to appoint counsel was not a violation of Art. 21 as it "was not aimed to compel the State to provide counsel for the accused," at 607, although in some circumstances

dant is entitled to the appointment of a counsel to assist him at his trial, see Maryland Rule 719, he is not entitled to the appointment of a counsel of his choice, but only to such counsel as the court may assign. This fulfills the constitutional guarantee so long as the counsel assigned affords the defendant a genuine and effective legal representation under all the circumstances of the particular case. *Davenport v. State,* 7 Md. App. 89. But when an accused has the means to employ counsel, he should be afforded a fair opportunity to secure counsel of his own choice. See *Powell v. State of Alabama,* 287 U. S. 45, 53. The only distinction between appointed counsel and privately employed counsel, in the frame of reference of this decision, is as to choice of a particular attorney. The court makes the choice as to appointed counsel; the accused has the choice as to privately employed counsel. We note that there is no valid distinction between appointed counsel and privately employed counsel in determining the adequacy of representation of an accused. *Swann v. State,* 7 Md. App. 309. But once counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of *that* counsel at trial. The Supreme Court said in *Chandler v. Fretag,* 348 U. S. 3, at 9: "Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified." So the accused cannot be forced to be heard at trial through counsel other than the one employed by him or appointed by the court, as the case may be, to represent him, no matter how competent, experienced and conversant with the case other counsel may be and regardless of the fact that in retrospect the other counsel afforded him a gen-

such failure or refusal may be a violation of due process of law. But since *Gideon v. Wainwright, supra,* the VI Amendment guarantee is obligatory upon the states by Amendment XIV, and we are now bound by the interpretation of the Supreme Court as to the right to counsel guaranteed by the Federal Constitution. The holding in *Raymond* that the State is not compelled to appoint counsel for an accused is no longer controlling.

uine and effective representation.[4] Of course, an accused may competently and intelligently waive his constitutional right to assistance of counsel. See *United States v. Wade*, 388 U. S. 218, 237, citing *Carnley v. Cochran*, 369 U. S. 506. "The Constitution does not force a lawyer upon a defendant." *McCloskey v. Director*, 245 Md. 497, 503. And it follows that if he can waive the assistance of counsel, he can also so waive the assistance of a particular counsel appointed for him or employed by him, and accept the representation of other counsel in his place.

In the instant case we think that it was Morris L. Kaplan who was employed by appellant to represent him at the trial. From what was before the lower court and on the record we can reach no other conclusion. We do not feel that the court was justified in the circumstances in considering the appearance entered—"M. L. Kaplan"—to mean Michael L. Kaplan. And we think it clear that appellant did not waive the right to the assistance of Morris Lee Kaplan at trial, nor did he, in the circumstances, freely and voluntarily accept the representation of Michael Lee Kaplan in his place. We hold that appellant's right to have the counsel privately employed by him to assist him at his trial was denied and that the denial was reversible error.

We do not condone the failure of Morris Lee Kaplan to appear to represent his client. If there was valid reason for him not appearing at the trial, he should have made this known in timely manner to the court and to

---

4. We note that as to the right of the presence of counsel at a lineup, the Supreme Court in *United States v. Wade*, 388 U. S. 218, 237, expressly left open the question "whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay." But the unresolved question would in any event apply only to a lineup, not a trial. The Court noted, note 27 at 237, "Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that substitute counsel's presence may eliminate the hazards which render a lineup a critical stage for the presence of the suspect's *own* counsel." Such justification is clearly not apposite to the right of a defendant to be heard through his *own* counsel at trial.

his client and other arrangements, mutually agreeable, made. On the other hand we think the denial of a postponement of the trial to enable appellant a fair opportunity to secure the appearance of counsel employed by him was an abuse of judicial discretion in the circumstances. The proper sanction for the failure of appellant's counsel to appear was not to force appellant to go to trial without such opportunity to obtain the presence of his counsel but for the court to take such action against the derelicting counsel as may have been appropriate. We are not unaware of the necessity for the expeditious disposal of cases, particularly in Baltimore City where the heavy caseload is a constant problem. But such necessity, no matter how compelling, cannot thwart the proper administration of justice.

## THE ADMISSION OF EVIDENCE SEIZED

The appellant also contends that tangible evidence was erroneously admitted against him.[5] He claims that the evidence was obtained by a seizure incident to an illegal warrantless arrest of appellant. If the arrest was legal the seizure was reasonable. *Michaels v. State,* 2 Md. App. 424; *Winebrenner v. State,* 6 Md. App. 440. A legal arrest may be made without a warrant if the arresting officer had probable cause to believe that a felony had been committed and the arrestee committed it. *Simms v. State,* 4 Md. App. 160. A report of a felony and a description of the perpetrators broadcast over a police radio may furnish probable cause for an arrest; the arresting officer need not himself have probable cause for the arrest where another member of the police team has probable

---

5. Timely challenge to the introduction of the evidence was not made. There was no pretrial motion to exclude it, Rule 729, and no objection was made at the time the evidence was offered or as soon thereafter as objection to its admissibility became apparent. Rules 522 d 2 and 725 f. But at the close of the State's case, defense counsel, admitting that objection should have been made previously, requested the court to entertain a motion to exclude the evidence admitted and the court did so "even though it is late." Appellant offered no evidence on the issue although given the opportunity to do so. After argument the motion was denied.

cause and the arresting officer has been alerted to make the arrest over the police radio. *Robinson v. State,* 4 Md. App. 515, 524.

The judgment here being reversed, on retrial the determination of the legality of the arrest, if proper challenge is made to the admission of evidence seized incident thereto, would be upon the evidence adduced at the retrial. However, because of the unusual factual posture of the circumstances of the instant case we deem it advisable to discuss the admissibility of the evidence seized for the guidance of the lower court on retrial.

We have no difficulty in deciding on the evidence adduced here that the arresting officer had probable cause to believe, from information received by a police broadcast, that a burglary had been committed and that appellant committed it. Detective Joseph Folio of the Baltimore City Police Department, assigned to the Criminal Investigation Division, testified that on 21 October 1968 about 1:30 P.M. he received a broadcast over the police radio that "wanted for investigation of a burglary which had just occurred at 401 E. North Avenue was a [colored] male subject, sixteen to eighteen years of age, he was tall in height, he was wearing a blue waist length jacket and he was last seen running south in the 1800 block of Barclay Street." When the broadcast was received the officer was in the 2400 block of Greenmount Avenue. He drove west on 24th Street to Barclay Street and south on Barclay Street. In the 2100 block of Barclay Street he saw appellant and another male. Appellant answered the description given in the broadcast; he was wearing a blue waist length jacket and was approximately six feet tall. "On the sidewalk between the two males I observed a portable record player, which was just sitting on the concrete. It wasn't in any bag or anything. I observed also a portable radio the same way, sitting on the sidewalk and not in any bag. And I observed a yellow type plastic bag of some sort. It appeared to be full. And on top of the bag sticking out was

a flash attachment to a camera." He also saw a camera sticking out of appellant's left jacket pocket. The officer accosted appellant but what was then said was objected to and the objection was sustained, apparently because the *Miranda* warnings had not then been given. It may be that the questioning of appellant at this time would not have been a custodial interrogation within the meaning of *Miranda*. See *Simms v. State, supra; Morgan v. State,* 2 Md. App. 440. The record then reflects that there came "a time when appellant entered" the police car and shortly thereafter a camera, apparently the one the officer had seen sticking out of appellant's pocket, was found under the front seat on the passenger side. The officer said he then placed appellant under arrest. We think the officer had probable cause to arrest appellant. We believe the arrest was legal whether in fact made when the officer first approached appellant or when the camera was found in the police car. Thus evidence seized incident to the arrest was reasonable. But the crime of which the officer had probable cause to believe appellant committed was the burglary of the dwelling at 401 E. North Avenue. Shortly after the arrest he ascertained that the goods found in the possession of appellant had not been stolen in that burglary. The police kept appellant in custody and retained possession of the goods. The next morning the officer learned that the goods had been stolen from the daytime breaking of a dwelling at 438 E. Lanvale Street, committed within an hour before the arrest of appellant. It was that offense of which appellant was tried and convicted. The legality of an arrest is measured by the existence of probable cause at the time thereof, not by subsequent events which may lead to the release of the person arrested from policy custody, either immediately or ultimately. *Boddie and Brooks v. State,* 6 Md. App. 523; *Leatherberry v. State,* 4 Md. App. 300; *Wilson v. State,* 2 Md. App. 210. And the offense of which the arrestee is subsequently charged is not controlling in determining whether there was probable cause to believe a felony was committed. *Tomolillo v. State,* 4 Md.

App. 711; *Simms v. State, supra.* That appellant, after his legal arrest, may have been for a time unlawfully detained would not vitiate the trial. *Hartley v. State,* 4 Md. App. 450; *Gibson v. State,* 4 Md. App. 222. Nor would it render inadmissible evidence which came into the possession of the police by a seizure which when made was reasonable as obtained incident to the legal arrest. And we note that the camera, identified as stolen from 438 E. Lanvale Street, was not obtained by a search of or seizure from the appellant in any event. It was found by the officer under the front seat on the passenger side of the police cruiser after appellant had entered the car. The trial court could have properly found from the evidence that it had been placed there by appellant and abandoned by him. One who abandons property cannot complain of the later seizure of such property by the police, or of its use against him in court. *Davis v. State,* 2 Md. App. 630 is factually apposite. And see *Jones v. State,* 5 Md. App. 180; *Scott v. State,* 3 Md. App. 429; *Boone v. State,* 2 Md. App. 479. The camera itself, by reason of the inference arising from the unexplained exclusive possession of recently stolen goods may have been sufficient to sustain the conviction. See *Sweeting v. State,* 5 Md. App. 623; *Jones v. State,* 5 Md. App. 180.

If the circumstances regarding the arrest of appellant and the seizure of the challenged evidence established at the trial of the instant case are established on retrial, the evidence would be properly admissible.

*Judgment reversed; case remanded for a new trial.*