Kenneth Warren **KLOCKENBRINK** and
Clayton Sprague Copsey, Appellants,

v.

**STATE** of Alaska, Appellee.

No. 1149.

Supreme Court of Alaska.

July 31, 1970.

Robert C. Erwin and Brian J. Brundin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellants.

Harold Tobey, Dist. Atty., Benjamin O. Walters, Jr., Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and OCCHIPINTI, Superior Court Judge.

CONNOR, Justice.

Appellants were found guilty of commercial fishing for salmon during a closed period, of commercial fishing in closed waters, and of escaping from a peace officer while under lawful arrest. From an affirmance by the Superior Court, appellants bring this appeal.

On the evening of Sunday, July 28, 1968, Fish and Game enforcement officers Stinson and Chinander, student stream guards hired for the summer, were on stake-out at the Kalsin Bay area near Kodiak, watching for possible violations. At about 8:30 p.m. a gray boat came into view which Stinson observed with binoculars and sketched. Stinson and Chinander observed the activities of the boat for an hour or so, later moving from their position to obtain a better view of the boat. Although the boat was lost to their observation for a short period of time, at about 10:15 p.m. they regained sight of the vessel with net and corks out. Because of the weather, windy and rainy with a low overcast, and the orientation of the boat, the two officers were unable to read the name or official number of the boat. Under the prevailing light conditions, visibility was limited to 300–400 yards.

Stinson proceeded to the beach, at the same time shouting to the vessel that he was with the Department of Fish and Game and was placing the crew under arrest. Although he requested that a skiff be sent ashore to pick him up, the crew responded by ignoring his request and preparing to leave. Stinson was thus forced to swim out to the boat to effect an arrest.

After he was aboard the crew did not cooperate with him. They threw all of the fish in their nets overboard, ignored his request to return him to where his partner was waiting, refused to let him use the radio, threw away the fish he had been keeping as evidence, and put him ashore at a spot some distance from where Chinander was waiting.

Once back on shore, Stinson returned, with the aid of a passing motorist, George Hunt, to the spot where he and Chinander had left their car. Both officers then proceeded to the home of their superior, Officer Wightman, arriving there about 3:00 a.m. After reporting the circumstances and giving the sketch of the vessel to Wightman, Stinson left to initiate an air search for the vessel. He identified the Norman J. from the air as vessel he had sketched and boarded, and reported this to Officer Wightman. Later in the morning, Wightman and Stinson located the boat returning to Kodiak and boarded it. Appellants were positively identified as those who had earlier been arrested, and they were advised of their rights. They were subsequently taken to jail and the Norman J. was seized.

Appellants were arraigned on July 29, 1968, at that time being represented by Mr. Roy Madsen for purposes of the arraignment only. A 24-hour continuance was granted to allow entering a plea. At the same time appellants were released on their own recognizance. Because appellant Klockenbrink's boat was under seizure, and because one of the state's witnesses was going to be out of state during the middle part of August, trial was set for the 6th of August. This setting was made in spite of the fact that appellants informed the judge that they would be represented by Wendell P. Kay of Anchorage, and that there might possibly be some difficulty in his preparing for trial on such short notice. The trial judge also stated that he would probably not grant a continuance, even if requested by Mr. Kay. On August 2, 1968, a motion was submitted to the court requesting the

release of the vessel. Motion was also made for a continuance, with counsel for the appellants stipulating to the taking of a deposition from the state's witnesses, who would not be available later. At this same special hearing, the district attorney suggested that perhaps a bond could be obtained in lieu of holding the vessel during the pendency of the proceedings. He also stated that he had no objections to the granting of a continuance. The trial judge ruled that he would allow a continuance of the trial date until August 19th, but refused to release the Norman J. As a result, appellants' counsel refused the continuance, not wanting the boat out of operation for that long a period of time during the middle of the fishing season. On August 5, 1968, the court granted appellants a continuance until the 7th in order to secure new counsel, since Mr. Kay was scheduled to defend another case at that time. On August 7th, Mr. Brundin appeared as counsel for appellants and requested a continuance, which was denied. The reason given by the judge for the denial was that the two state's witnesses would be absent from the state at a later date.

At trial, the composition of the jury was objected to because no commercial fishermen were available to sit on the jury. The objection was denied. Appellants also moved for a new trial based on newly discovered evidence, which motion was also denied. An appeal was taken to the superior court which affirmed the decision of the district court.

Appellants raise four claims of error on appeal. First, they contend that the trial court erroneously permitted the installing of an improperly selected jury; second, that the court had improperly ruled that no illegal search incident to the arrest had been made in violation of AS 16.05.180; third, that the procedure used to identify appellants was violative of their constitutional rights as enunciated in the *Wade-Stovall* line of cases; and lastly, that the trial court was in error in denying appellants a continuance to allow them representation by the counsel of their choice.

## THE JURY PANEL

In prosecuting their appeal, appellants contend that their constitutional rights were violated when the trial judge allowed the impaneling of a jury which failed to include any commercial fishermen.

Because this case is remanded with instructions to grant appellants a new trial, on other grounds, we need not dispose of this issue.

## THE SEARCH AND SEIZURE ISSUE

Appellants claim that the testimony of Stinson about his observations when he boarded the Norman J. should have been suppressed. Their contention, simply stated, is as follows AS 16.05.180 [1] provides that before a search without a warrant can be effected by those empowered to enforce fish and game laws, the person making the arrest must provide the owner of the property or object to be searched with a signed statement setting forth the reasons for the search. The legislative history, according to appellants, makes it clear that the legislature intended to set standards for search and seizure which are more strict than those required by the United States Supreme Court. Because Stinson failed to conform to the statutory requirements, the

---

1. "Each person designated in § 150 of this chapter may without a warrant search any thing or place if the search is reasonable or is not protected from searches and seizures without warrant within the meaning of § 14, art. I of the state constitution, which specifically enumerates 'persons, houses and other property, papers and effects.' However, before a search without a warrant is made a signed written statement by the person making the search shall be submitted to the person in control of the property or object to be searched, stating the reason the search is being conducted. A written receipt shall be given by the person conducting the search for property which is taken as a result of the search. The enumeration of specific things does not limit the meaning of words of a general nature."

ensuing search and seizure was illegal and any evidence obtained therefrom is inadmissable. We cannot agree.[2]

 AS 16.05.180 is not applicable in the instant case because no search was conducted. Stinson was on board effecting a legal arrest after personally observing the commission of a misdemeanor.[3] It is generally held that the mere observation of items which are in plain view or which are open and apparent, is not a search.[4] Consequently, evidence based on such observations is admissible so long as the observing officer was legally in the position where the observations were made.[5]

In United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), the Supreme Court considered a situation similar to the one herein. The Coast Guard came alongside a motor boat, the boatswain looked the boat over with a search light, and found some cans of alcohol on board. The boatswain's testimony was objected to because it was obtained as the result of an illegal search and seizure. In determining that the evidence was admissible, the court stated:

> "But no search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches." 274 U.S. at 563, 47 S.Ct. at 748.

Because we have determined that no search occurred, it is unnecessary to deal with appellants' other contentions involving the propriety of the "search".

2. Because we find that no "search" occurred, it is unnecessary to determine what, if any, effect AS 16.05.180 has upon searches which are conducted incident to a lawful arrest.

3. Miller v. State, 462 P.2d 421 (Alaska 1969). Appellants make no claim that the arrest was legally defective in any way.

4. Davis v. United States, 327 F.2d 301 (9th Cir. 1964); Brown v. State, 372 P.2d 785 (Alaska 1962); Thorp v. Department of Alcoholic Beverage Con-

## THE IDENTIFICATION QUESTION

The appellants argue that their identification by Stinson was made under circumstances so unnecessarily suggestive and conducive to mistake that they were deprived of due process of law. Furthermore, they argue that their identification was a "critical" stage of the proceedings so that they were entitled to counsel or a *Miranda* warning at the identifying confrontation.

 In their brief, appellants rely on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and related cases in support of their claim. The *Wade* and *Gilbert* cases concerned line-up procedures after an accused had been taken into custody. They held that such procedures are a "critical stage" of the accusatory proceedings at which a criminal defendant has the right to the presence of counsel. *Stovall* concerned the identification of a single suspect by a victim lying critically wounded in a hospital. The majority of the Court decided this case on the ground that the *Wade* and *Gilbert* rules should not be applied retroactively. We recognize that the constitutional validity of an identification of a suspect must be determined by the totality of circumstances surrounding it, as the Court in *Stovall* pointed out. For this reason, we believe that the cases cited by appellants are inapposite. Similarly, Rivers v. United States, 400 F.2d 935

trol, 175 Cal.App.2d 489, 346 P.2d 433 (1959); State v. Blood, 190 Kan. 812, 378 P.2d 548 (1963). See also Words & Phrases under "Search" and 4 Anderson, Wharton's Criminal Law & Procedure § 1540 n. 11 (1957).

5. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924).

(5th Cir. 1968), is not on point because it involved identification by a wounded victim of an accused who was in custody and was exhibited to the victim singly.

In formulating the "totality of the circumstances" standard, the Court in *Stovall* explained the rationale as follows:

"We turn now to the question whether petitioner, although not entitled to the application of Wade and Gilbert to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (CA 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. *However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. * * * * 388 U.S. at 301–302, 87 S.Ct. at 1972. (emphasis supplied) (footnote omitted).

The following events occurred which shed some light upon this issue. When Stinson and Wightman first boarded the Norman J., on the morning of July 29th, Wightman asked Stinson whether these were the man he had attempted to arrest the previous evening, to which Stinson replied, "Yes, sir." Wightman then advised appellants that they were still under arrest and proceeded to seize the vessel.

Prior to this, Stinson had observed the boat engaging in commercial fishing in violation of the fish and game laws. He was unable to read the name or numbers on the boat, both because of the weather conditions and the position of the boat. Because the vessel appeared to be preparing to depart, Stinson had swum out to the boat and had been pulled aboard by one of the men on the boat. While aboard the boat, Stinson had an almost constant conversation with the captain, requesting him to send a skiff to pick up Chinander or radio the authorities that Stinson was aboard. After Stinson had talked to the captain for about 20 minutes, the vessel began pulling onto the beach. Stinson was then ordered into a small skiff with the captain, and apparently with Mrs. Copsey, the other appellant, and taken ashore. At trial, Stinson identified Mr. Copsey as the man who had pulled him aboard the boat and Mr. Klockenbrink as the captain of the vessel.

▇ In the case before us it is the original arresting officer who made the identification of the accused upon their rearrest. He had been aboard the vessel for an appreciable period of time the evening before, so this is not a situation where the victim has had only a momentary or fleeting glimpse of an assailant. The fact that Stinson was inexperienced is, we believe, offset by the fact that he spent some 20 minutes conversing with one of the appellants. Furthermore, it was especially within the province of the jury to determine the accuracy of his observations.

We are unable to perceive how a lineup could have been arranged for the crew of the vessel out on the water, in order to determine whether the identification leading to the arrest was proper. Nor do we feel constrained to agree with appellants that such a lineup would have been proper under the circumstances, given the possibility of such a lineup. Our attention has not been directed to any cases in which an arresting officer, after viewing what he reasonably believes is a misdemeanor committed in his presence, has been required to hold a lineup, in order to test the reliability of his perceptions, before effecting a rearrest. Such a rule would be a legal and practical absurdity. Where the original arresting officer is the only one who can identify the accused, there would be no way ever to rearrest an accused in order to arrange a proper lineup, absent the officer's identification.

Viewing the totality of the circumstances, we feel that appellants' right to due process of law has not been violated. Stinson's testimony about the arrest was properly before the jury.

## THE DENIAL OF CONTINUANCE

Appellant's final complaint stems from the trial judge's failure to grant a continuance so that appellants might have counsel of their choice represent them at trial.

On August 2, 1968, Mr. Kay, appellants' counsel, informed the district court judge that he would be unable to appear for the August 6th trial date, as he had a trial in another court at the same time. The judge denied Mr. Kay's request for a continuance, stating as his reasons that the state's key witnesses were scheduled to leave Alaska shortly and the fishing vessel was under seizure which would prevent appellants from pursuing their livelihood during the fishing season. Appellants suggested that the state's witnesses be deposed and that a bond be furnished so that the vessel could be released. Apparently this would have satisfied the state's attorney. Details of this agreement were communicated to the court in a telegram.

At one point it appeared that an agreement had been reached to continue the case until August 19, at which time Mr. Kay could be present. However, when the court ruled that the fishing boat was validly seized and would remain under seizure until the trial, Mr. Kay indicated he would have to withdraw from the case rather than allow his client to be without means to make a living for that long at the height of the salmon season. The court then decided that the trial date should remain August 6th.

Because of the August 6th trial date, appellants obtained the services of another attorney, and requested a one-day postponement of the trial, which request was granted. When Mr. Brundin, the new counsel, appeared on the 7th, he again renewed the motion for a continuance in order that he might adequately prepare the defense. This motion was denied, the court stating

"In this case it has been consistently the Court's position that it was necessary to set this case down for an early trial for two reasons, the first reason being that the boat was under seizure in this case and that would seem to me to be in favor—or trying to accord the defendant right to an early trial as required by the constitution and the law. The second point here is that it—it's apparent to the Court that two State's witnesses are leaving the area for the states. One of them is being married in Louisiana on the 22nd of August. The request for trial date was the 19th of August by Mr. Kay and I questioned this witness under oath yesterday as to that problem * * * and he testified under oath that he's being married on the 22nd of August in Louisiana that a hundred persons have already been requested to—been invited to the wedding; it's all set. It's totally improbable or it seems—it doesn't seem necessary that the witness should have to miss his wedding in connection with this trial. And the trial could, in any event, not be set on the 19th, I don't think under those circumstances. Both State witnesses are leaving the State shortly. It would require the State to bring back two witnesses from out of State and we would have a situation where the District Attorney and the defense attorney and the witnesses were all out of Kodiak. At the present time, the District Attorney and defense counsel and the witnesses are here ready to go for trial, and I have consistently denied the request for continuance on the basis of all the facts I could see. I think this case needs to go to trial soon. Now, it's been said, it's been noticed, a continuance was denied once, I'm going to deny it again. The general continuance on a basis that counsel is not available or that the particular counsel desired is unable

to make it here at this time, on those grounds, it's denied."

Later, the court indicated its denial was based on the unavailability of the state's witnesses rather than the boat seizure.

■■■■ Granting or denying a continuance traditionally has been within the discretion of the trial judge, and not every denial of a request for additional time violates due process. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921; reh. denied, 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). To constitute error an abuse of this discretion must be shown. Gregoire v. National Bank of Alaska, 413 P.2d 27 (Alaska 1966); Mead v. State, 445 P.2d 229 (Alaska 1968). It is only an arbitrary refusal that is violative of due process and that question depends upon the circumstances of each case, especially the reasons supporting the request for continuance. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; reh. denied 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957); United States ex rel. Hyde v. McMann, 263 F.2d 940 (2d Cir. 1959), cert.

denied, 360 U.S. 937, 79 S.Ct. 1462, 3 L. Ed.2d 1549 (1959).

Although there is no well-established standard for determining when a denial has been arbitrary[6] we are not without guidelines for making such a determination. In People v. Solomon, 24 Ill.2d 586, 182 N.E.2d 736 (1962), the court utilized the following approach:

"The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights." 182 N.E.2d at 738 (citations omitted).

In the memorandum accompanying their motion for a new trial, appellants specifically indicated prejudice to them resulting from the denial of their request for a continuance.[7]

6. Baggett v. State, 41 Ala.App. 342, 133 So.2d 33 (1961) (Accused unable to pay for counsel of his choice refused to allow court to appoint counsel for him; held, no abuse when continuance denied); Daniels v. State, 219 Ga. 381, 133 S.E. 2d 357 (1963) (no abuse since accused had opportunity to obtain counsel of choice and made no objection when other counsel appointed); Davis v. State, 97 Ga.App. 342, 103 S.E.2d 86 (1958) (No abuse even though accused had only five days from arrest to trial); Commonwealth v. Brant, 346 Mass. 202, 190 N.E. 2d 900 (1963) (no abuse of discretion since accused had almost year to obtain counsel); State v. Harvey, 170 S.E.2d 657 (S.C.1969) (no abuse although counsel appointed just four days prior to trial).
Creed v. United States, 156 A.2d 676 (D.C.MunCt.App.1959) (abuse to deny continuance when arrest, arraignment and trial occurred on same morning); People v. Ritchie, 66 Ill.App.2d 417, 213 N.E.2d 306 (1966) (accused believed his family would provide counsel; court denied continuance because public defender

represented him; held, abuse); People v. Kenzik, 9 Ill.2d 204, 137 N.E.2d 270 (1956) (abuse to deny continuance when counsel had less than 30 days to prepare defense and 19 of those days used to actively engage in another trial; not dispositive that public defender refused by accused); English v. State, 8 Md. App. 330, 259 A.2d 822 (1969) (abuse of discretion for court to deny continuance personally requested by accused when son of counsel of accused's choice appeared at trial); Butler v. State, 253 Miss. 760, 179 So.2d 184 (1965) (accused had insufficient time to locate and call witnesses; held, an abuse even though witnesses might not have attended).

7. Appellants indicated that a new witness, not available at the time of trial because of inadequate time for investigation, would have testified that he saw two boats in the area where the alleged illegal fishing occurred; that he saw the Klockenbrink boat leave before the other one and that he was sure that the alleged crime had not been committed by Klockenbrink but by someone else. (At's br. p. 25, n. 1).

■■ It is unquestionable that the right to the assistance of counsel of necessity includes the concommitant right to have a reasonable time in which to prepare for trial. Brooks v. State, 176 So.2d 116 (Fla.App.1965). Furthermore, the mere fact that the state's witnesses would be out of the state at a later time does not persuade us of the correctness of the trial court's denial of the continuance. As the court stated in Creed v. United States, 156 A.2d 676, 678 (D.C. Mun.Ct.App. 1959):

"It was not a sufficient excuse for denying the continuance that the Government's witnesses desired to leave town that afternoon, nor is it any answer to say that the Government's willingness to stipulate as to character testimony justified the court in requiring counsel to proceed with the trial without the benefit of the personal testimony of character witnesses."

It is imperative that counsel be afforded adequate time in which to prepare his defense, especially when serious charges, such as those involved herein, must be squarely met. Without speculating upon what the defense might have presented on behalf of appellants, we do take notice that an important witness did not testify at trial because he had not been located until trial was completed. We can take guidance from the following:

"Justice requires, and it is the universal rule, observed in all courts of this country, it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime, without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error; it strikes at the root and base of constitutional liberties; it makes for a deprivation of liberty or life without due process of law; it destroys confidence in the institutions of free America and brings our very government into disrepute." Coker v. State, 82 Fla. 5, 89 So. 222 (1921).

Even if a denial of adequate time to prepare a defense were alone insufficient to constitute an abuse of discretion, necessitating the granting of a new trial, appellants urge upon us and we find merit in the argument that they were also denied the right to have counsel of their choice represent them at trial.

■ Appellants originally sought representation by Mr. Kay. When it was learned that the trial court would not allow the release of the Norman J., Mr. Kay, desirous of proceeding as quickly as possible so that the boat could be released for the fishing season, declined to defend appellants because he had a conflicting court schedule. While it will not always be the case that a continuance should be granted to afford an accused the opportunity to secure counsel of his choice, we believe that the trial court should have granted the motion for continuance in the present case.[8]

This issue was recently dealt with in English v. State, 8 Md.App. 330, 259 A.2d 822, 826 (1969) where the son of the accused's counsel appeared at trial in his father's place. The accused personally moved the court for a continuance in order that the father might appear on his behalf. In overturning the denial of the motion, the court reasoned:

"We note that there is no valid distinction between appointed counsel and pri-

---

8. Our opinion in no way indicates our belief that a bond in lieu of holding the Norman J. should have been accepted by the trial court. That narrow question is not before us and we do not decide it.

vately employed counsel in determining the adequacy of representation of an accused. But once counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of *that* counsel at trial. The Supreme Court said in Chandler v. Fretag, 348 U.S. 3, at 9, 75 S.Ct. 1, at 5, 99 L.Ed. 4: 'Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified.' So the accused cannot be forced to be heard at trial through counsel other than the one employed by him or appointed by the court, as the case may be, to represent him, no matter how competent, experienced and conversant with the case other counsel may be and regardless of the fact that in retrospect the other counsel afforded him a genuine and effective representation." (citation and footnote omitted) (emphasis in original).

There is no question but that appellants were adequately represented by Mr. Brundin to the extent that his abbreviated time for preparation allowed. The fact remains, however, that their first choice was Mr. Kay.

Viewing the circumstances surrounding the genesis of this particular problem, we can only conclude that it was clearly an abuse of discretion for the trial judge to deny appellants' motion for a continuance. Appellants should have been given a reasonable amount of time in which to prepare a defense. We are not unaware of the difficulties faced by the court—the fact that the state's witnesses would shortly leave the state and the seizure of the Norman J. But there are limits upon the use of the argument from expediency as a solution to all close questions. Baker v. City of Fairbanks, 471 P.2d 386 (Alaska June 5, 1970).

Accordingly, this case is remanded with instructions to grant appellants a new trial.