PER CURIAM.
Appellant was convicted of transporting prohibited liquor in quantities of five gallons or more pursuant to Title 29, § 187, Code of Alabama 1940. He was sentenced to three years imprisonment.
DeKalb County Chief Deputy Sheriff George Minor was in Gadsden, Etowah County, observing a State liquor store. He spotted the appellant coming from the store and loading into his ear trunk two cardboard liquor cases bearing the label, “Sea-grams Seven.” He sent out over his police radio a code number which was assigned to the appellant. He stated that all suspected bootleggers in the county were assigned code numbers. He started trailing the appellant, but lost him for approximately five or ten minutes, and then proceeded to the interstate highway leading toward DeKalb County. Within a few minutes, appellant passed Deputy Minor, traveling in excess of 90 m. p. h. Being unable to catch the appellant, Minor then sent out a radio dispatch giving the make of car, tag number and the identity of the driver.
John Thomas Moses, Assistant Police Chief of Rainesville, after hearing the radio alert, stopped the appellant’s automobile in DeKalb County. Jerry Bethune, Chief Investigator for DeKalb County, arrived on the scene, “in less than a minute.” The appellant refused to open his car trunk, saying he did not have a key to the trunk. Bethune pried the . trunk open with a tire tool and found two cases of Seagrams Seven whiskey amounting to six gallons. The officers did not have a warrant.
I
Appellant challenges the warrantless search of his automobile.
It is our opinion that the above facts fall within the exception to the search warrant requirement; where exigent circumstances exist coincidental with probable cause. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). The facts in the instant case are very similar to the fact situation in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925).
*106 The mobility of the automobile here, capable of exceeding 90 m. p. h., provides us with the exigent circumstances. Probable cause is supplied by the information received over police radio from Deputy Minor, an eyewitness to the loading of the liquor in the car. Crane v. State, 55 Ala.App. 619, 318 So.2d 315 (1975).
Certainly, the Deputy Sheriff witnessing the appellant coming from a liquor store, pushing a loader containing two cardboard boxes clearly labeled “Seagrams Seven,” and seeing the appellant load them in his car and drive away, were sufficient circumstances to lead an ordinary, prudent and reasonable man to believe that the appellant had in fact loaded liquor into his car. That, coupled with the fact that the appellant passed Deputy Minor on the interstate to DeKalb County at a high rate of speed and Deputy Minor followed him into De-Kalb County, supplies sufficient facts from which probable cause springs forth. In the light of these circumstances, to say that Deputy Minor did not have probable cause to believe the appellant was transporting two cases of liquor in DeKalb County, would be to deny the obvious.
II
Appellant contends that the trial court committed reversible error by overruling his motion for a continuance.
When the instant case was set for trial, a Birmingham attorney supposedly retained by the appellant was not present. However, appellant’s appointed counsel on appeal, who had originally been appointed to represent appellant and' who did so at arraignment, was present and made known to the court that the appellant was under the impression that he was to be represented by retained counsel from Birmingham.
In pertinent part, the following transpired:
“COURT: I now call the case of the State of Alabama versus Paul Mars. Mrs. Bush, you told me this morning that you had had trouble getting in touch with your client, Mr. Mars.
“MRS. BUSH: Mr. Winegar informed me that Mr. Winegar was representing Mr. Mars.
* * * 5{! Sfc
“COURT: Mr. Winegar, an attorney in Birmingham, told you that he represented this man?
“MRS. BUSH: Sent me a letter.
* * * * * *
“MRS. BUSH: I called him several times and left word for him to return my call and finally I talked with his secretary. “COURT: Did you leave word that the case was set for today?
“MRS. BUSH: Yes sir I told her that the case was set for the 23rd and that Mr. Winegar should file an appearance with the clerk and should check with the District Attorney’s office to see when the case would actually be heard, because I did not know which day the case would be tried, and she said that she would tell Mr. Winegar that. Now, I have been in and out of my office and he has not tried to contact me any more since then. Now, Mr. Mars came by the office and picked up a copy of the docket so Mr. Winegar also had a copy of the docket.
* * # * * *
“MRS. BUSH: Well, his secretary knew it was set for the 23rd and I told her to have him contact Mr. Black, if he had any conflicts or anything like that.
* * * * * *
“COURT: Has he contacted you Mr. Black?
“MR. BLACK: No, sir, my secretary called him this morning right before lunch and he said that he had not been paid and that he did not represent him.
“DEFENDANT: He was supposed to come here this afternoon.
“MRS. BUSH: He said when Mildred talked to him that he was coming but that he did not represent Mr. Mars, and that I had never contacted him, that he did not know anything about the case or anything, and that he was coming up here merely to get everything, straightened out.
*107 “COURT: Well, Mr. Mars, we had an arraignment day and one of the main purposes of arraignment is to make sure that you had counsel. Now, you have not stayed in touch with this little lady so that she could summon witnesses and make preparations. That is what you told me?
“MRS. BUSH: Yes sir. We did not have a list of witnesses or anything.
“COURT: No list was furnished to you?
“MRS. BUSH: No sir. We advised him to furnish us with a list and I told him if I should be away in civil court to leave it with my secretary, but now, Mr. Mars was under the impression that he was being represented by Mr. Winegar.
“COURT: Well, I have not heard from him and the clerk tells me that he has not heard from him and the District Attorney tells me that his office called.
“MR. BLACK: Yes, sir, about ten till twelve right before lunch.
“COURT: Well, do you want to act as your own counsel in the case?
“DEFENDANT: No sir.
“COURT: Well, what do you expect me to do?
“DEFENDANT: Well, he is supposed to be here in a little while is all I know. “COURT: He was supposed to have been here at 9:00 o’clock. Mrs. Bush, would you do this, would you sit over there and see that his rights are protected and see that he gets two strikes to the State’s one and various and sundry other things that he is entitled to. I am not asking you to represent him, to defend him, but just to see that he is accorded all of the rights that he is guaranteed under the Constitution, under the statutes and under the case law. I intend to try and see that he gets them myself, but I would like for you to sit there.
“MRS. BUSH: Yes sir, I feel like he thought that Mr. Winegar was going to be here. I think as far as I am concerned he is guilty in not contacting me but we were both under the impression that Mr. Winegar was going to represent him.
* * * * sic *
“COURT: Are you ready to strike?
“MRS. BUSH: I need to talk to his witnesses before or after we strike, whichever.
“COURT: I tell you what we are going to do. We are going to strike this jury and put twelve in the box, and when they strike this jury and get the twelve selected I am going to excuse all of the other jurors until 9:00 o’clock in the morning. When we strike the jury, before we start taking any testimony, I am going to give Mrs. Bush an opportunity to see who the witnesses are and so forth so, if you are ready to go ahead and strike.
“COURT: . . We have some preliminary matters to take up so I will think I will just wait about this other so you will not have to be kept together and if you want to get a Coke you are free to do it. It will be about twenty-five minutes before we start.”
From the record it appears that Mrs. Bush, whether formally appointed or not, gave full representation to the appellant during the course of the trial. After the jury was sworn, she made a motion for a continuance on the grounds that other cases appeared on the docket ahead of the instant case and that the appellant’s retained counsel had informed the District Attorney’s office that he would appear in court that afternoon. The District Attorney in answer, stated that the retained counsel had stated on the telephone that he did not represent Mr. Mars, that he had not been employed and had not been paid by Mr. Mars. The District Attorney further stated that Mrs. Bush, then present, had appeared at arraignment for Mr. Mars. Mrs. Bush then replied that, “. . . Mr. Mars would show, that the counsel that represented him at arraignment has withdrawn from the case, and that he has been informed by Mr. Winegar that he would represent him in this matter, that he would appear in the DeKalb County Circuit Court on Monday, February 23.”
The court replied that the instant case was the thirteenth case on the printed dock *108 et sheet and that all of them had been disposed of on guilty, pleas except two. Of the two remaining, one defendant was in jail for contempt and the State was not ready to present the other case at that time. The court overruled the motion for a continuance, and the State put on its case in chief, after which the appellant testified in his own behalf.
The appellant stated that he purchased the liquor in question from a State store in Gadsden and that it was carried out and put in the trunk of his car without him touching it. He said he left the liquor store and went to eat supper which consumed some thirty or forty minutes. Appellant testified that he went through Collinsville, where he was stopped, without ever being on the interstate highway.
He said that after Officer Moses stopped him, he was requested to allow the officer to look in the trunk, but he requested a search warrant. He said that within two or three minutes Bob Huntington and then Gerald Bethune arrived at the scene. Appellant testified that after Bethune broke into his trunk, he was placed under arrest. On cross-examination, the appellant freely admitted that he purchased the whiskey at the State store in Gadsden and transported it into DeKalb County, and that it consisted of six gallons.
Counsel for appellant called Robert E. Huntington as a witness for the defense. He testified that he was Chief of Police of Fyffe, Alabama, on the night in question. He recalled hearing the radio dispatch to watch for a car coming up the mountain, but the dispatch did not say what kind of car to look for. He estimated that he arrived at the scene of the arrest about five minutes later and was told that the appellant had two cases of liquor in his car. He did not participate in the arrest and did not see the liquor. On cross-examination, he stated that he did not hear Deputy Minor giving information over the radio, that they were on different radio frequencies and that he only heard the call from the dispatcher.
The granting or denying of a motion for continuance on the ground that counsel had insufficient time to prepare for trial normally rests within the sound discretion of the trial judge, and his decision will not be reviewed except in cases of gross abuse of discretion. Smith v. State, 282 Ala. 268, 210 So.2d 826 (1968).
This Court reversed the denial of a petition for writ of error coram nobis in a case which was similar to the instant case, in Browning v. State, 57 Ala.App. 217, 326 So.2d 778 (1975), cert. denied Ala., 326 So.2d 783. In that case, Browning was under the misimpression that he had retained counsel from Atlanta, Georgia, to represent him in Alabama, but learned that before trial that such attorney would not be present. He then paid an initial fee of $200.00 to a Gadsden attorney to represent him, but due to some conflict, that attorney was unable to be present. The trial court then appointed a prominent Gadsden attorney to represent Browning on arraignment only. On the date of the trial, the retained counsel did not appear, at which time the court appointed the same attorney who represented Browning at arraignment to represent him at trial. The court gave the attorney only fifteen minutes to consult with his client before trial.
In Browning, this Court after having affirmed the original appeal reversed the trial court on appeal from denial of coram nobis, based on evidence not heard in the original trial, but presented in the post conviction proceedings.
Browning differs somewhat from the instant case in that Browning, “was faced with efforts to contact the alibi witnesses in Georgia, with whom he was not acquainted, and try to persuade them voluntarily to come to court; process for such appearance was unavailable under Alabama law.
In the instant case, there was no mention of an attempt to secure witnesses on the part of the defense. During the colloquy between the appointed counsel for appellant and the court, it appears that the appellant had been notified to leave a list of witnesses *109 with the appointed counsel, which he failed to do.
In the instant case, appellant’s appointed attorney represented him only at arraignment and then withdrew from the case, only to be “requested” by the trial judge to sit with the appellant and see that his rights were observed during the trial. In Browning, the appellant’s appointed counsel represented him only at arraignment and likewise was under the impression that retained counsel had taken over the case after arraignment. There, on the date of the trial when the retained counsel did not appear, the trial judge actually appointed the attorney used at arraignment to represent the appellant. Thus, the facts of the instant case and the Browning case are only distinguishable concerning the difficulty of obtaining witnesses from Georgia, with which Browning’s attorney was faced, but which is absent from the instant case. Otherwise, the cases are almost identical.
The Browning opinion cites Kearley v. State, 52 Ala.App. 405, 293 So.2d 322 (1974) as authority. There, the appellant moved for a continuance because he was notified in the penitentiary in Atlanta on a Friday that he was to be tried the following Monday, and he was not able to confer with his attorney, who was appointed on the date of the trial, or obtain material witnesses.
In Kearley, this Court stated:
“We think that such a hurried trial after appointment of counsel (on the same day) converted the appointment of counsel into a sham, and was nothing more than a formal compliance with the constitutional requirement that the indigent defendant be given the assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. This guarantee of assistance of counsel as mandated by Wainwright and the constitution cannot be satisfied by a mere formal appointment. The appointment of counsel on the same date of trial did not give them reasonable time to plan and prepare the defense of their client and to see if they could obtain the defendant’s witnesses in person or their evidence as provided by law. Powell v. Alabama, 287 U.S. 45(4)(5), 53 S.Ct. 55, 77 L.Ed. 158.”
Applying the concurring opinion of Cates, P. J., in the Browning case tilts the scales more in favor of the appellant’s position. Mrs. Bush, having been appointed for the arraignment and then having withdrawn from the case, was thereafter under no duty to the appellant Mars. As Judge Cates pointed out, under the Canons of Ethics, the attorney could run afoul of prohibitions against “officiously intermeddling in the defense of a case in which another lawyer was already ostensibly employed.”
Neither does this case fall within the purview of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In the instant case, when the attorney whom Mars claims to have retained failed to appear in court, the trial judge asked the appellant if he wanted to defend himself. The appellant’s reply was that he did not. Had the appellant’s reply been in the affirmative, the decision we reach may have been different. The refusal of counsel by the defendant in Baggett v. State, 41 Ala.App. 342, 133 So.2d 33, cert. denied 272 Ala. 699, 133 So.2d 37, cert. denied 369 U.S. 830, 82 S.Ct. 848, 7 L.Ed.2d 795 (1961), distinguishes it from the instant case.
In Rogers v. State, 36 Ala.App. 602, 61 So.2d 249 (1952), the trial court’s denial of a continuance was affirmed. There, counsel for Rogers moved for a continuance based on the fact that he was employed on the date of the trial and had not had adequate time to prepare for the defense. The trial court, in its order denying the motion noted that the defendant made bond after his arrest on September 15 and had ample opportunity to employ counsel before trial on November 5 of the same year. In the instant case, we note that Mars was indicted on January 15, 1976, and made bond on January 20, and the trial commenced more than a month later, on February 23.
In Rogers, the appellant had sufficient time while out on bond to employ counsel, but neglected to do so until the date of the trial. In the instant case, as well as in Browning, the appellant, after arraignment, *110 had ostensibly retained counsel who, for whatever reasons, did not appear on the date of the trial. In both instances, counsel were given only a few minutes to converse with the defendant prior to trial, which amounted to a denial of effective assistance of counsel. See also a very strong opinion by Justice Harwood in Davis v. State, 292 Ala. 210, 291 So.2d 346 (1974).
We are not unmindful of the needs of the trial courts to expedite their dockets and proceed in an orderly manner, unabated by unnecessary continuances. However, we do note the absence of any great urgency in the instant case making it imperative to put this defendant to trial with the assistance of an unappointed attorney with only twenty-five minutes allowed for preparation of a defense. In this regard, we specifically note that the ease set on the docket ahead of the instant case was continued for the prosecutor in a simple matter-of-fact manner. In the trial judge’s own words, “In the other case, the State tells me there is some little matter they are not quite ready in it.” The District Attorney stated, “We are trying to find a search warrant in the clerk’s office and we cannot locate it and maybe they will find it after a while.”
Such were the circumstances that brought the instant case up on the docket next. While the trial court, no doubt, properly exercised its discretion in continuing the prior case because the prosecution was unprepared due to misplacing a warrant, we think the trial court abused its discretion in the instant case by forcing the appellant to trial under the circumstances hereinabove outlined. The appellant is therefore entitled to a new trial.
REVERSED AND REMANDED.
All the Judges concur.