318 So.2d 315

**Ronald J. CRANE, alias**

**v.**

**STATE.**

**3 Div. 354.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Benjamin E. Pool, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and J. Brent Thornley, Asst. Atty. Gen. for the State.

BOOKOUT, Judge.

Grand larceny; sentence: ten years imprisonment.

Testimony established that the appellant, Ronald J. Crane, and an accomplice Ronnie Brown stole fourteen diamond rings from Capitol Jewelers and Distributors in Montgomery on August 16, 1972.

Witness Susie Faile testified that around 12:30 P.M., on that date, she was at the diamond counter of the establishment returning a ring. She observed the appellant and another man at the same diamond counter. She testified that she observed the appellant lift the glass on the diamond case and the other man remove two trays of diamond rings. Appellant put one tray under his coat and both men ran from the store. The witness immediately reported the theft to Mrs. Betty Mitchell, a clerk in the diamond department.

Mrs. Mitchell testified that she had observed the appellant and Brown in the store at the time and on the date in question. She did not see them take the diamonds as she was at another counter obtaining authority for a customer's refund. Mrs. Faile alerted her to the theft, and she notified Mr. Arthur Glenn Sexton of the diamond department of the store. Mrs. Mitchell observed the counter to have been locked, but the glass top had been displaced. She made a definite identification of appellant and Brown at the police lineup later that day.

Mr. Sexton testified that he had observed the appellant and Brown in the diamond department of the store on the date and at the approximate time of the theft. He did not personally see the theft, but on being informed of it, he examined the diamond counter and discovered two trays totaling fourteen diamond rings were missing. He identified the missing diamond rings at the police station later that day. He made an individual identification of the rings at that time and in court, he separately identified the tags which were attached to the rings. He testified as to the value, description and identification of each ring and the tags were introduced into evidence. Likewise, admitted into evidence was a photograph of the diamonds taken at the police station upon being identified by Mr. Sexton as depicting the rings stolen.

Christopher Filley, an employee of the store, was just returning from a break when he saw the appellant and Brown run from the store, get into a light colored Cadillac and speed off. He observed one had a black case in his hand similar to the diamond cases used by the store. The two passed within thirty feet of him, and he observed the direction in which they drove. He had first observed appellant and Brown in the store around 10:00 A.M. that morning. He, likewise, made a positive identification of the two from a police lineup later that day.

Officer Clarence Edward Ward, an enforcement agent of the State Alcoholic Beverage Control Board testified as to the arrest and search of the suspects. He received a radio dispatch over the State Trooper network that two white males in a light colored Cadillac bearing a white or a black and white license tag had been involved in a theft. When the suspects stopped at a service station, the witness apprehended them. Before a search was made, he radioed for a more detailed description of the suspects to include their clothing. The description fit the suspects, and they were searched and fourteen diamond rings were found on Ronnie Brown. The witness said each ring had an identification tag on it, and he identified State's Exhibits 1 through 14 as being those tags. He testified that he showed the rings with tags attached to Mr. Sexton who also identified them.

Counsel for appellant cross examined each witness for the State and offered one witness for the defense. Detective R. M. Lindsey testified he was unable to obtain any identifiable fingerprints from the diamond cabinet due to the prints being smudged.

There was no motion to exclude the State's evidence after the State rested its

case in chief. There was no exception to the court's oral charge after additional instruction requested was given, and there was no motion for a new trial. Appellant filed a pretrial motion to suppress the evidence obtained by the search of Officer Ward, and renewed such motion verbally during trial, all of which were overruled by the trial judge.

I

■ Appellant contends that Officer Ward did not have probable cause to arrest or search him and Brown. We disagree. Officer Ward was a law enforcement officer of the state acting upon a State Trooper radio dispatch. The vehicle and occupants fitted the description given him by radio. A felony had been committed, and he had probable cause to believe the suspects may have committed the crime. Officer Ward testified in part as follows:

"Q. Now, what was the cause for your having had your attention centered on these individuals?

"A. We received a broadcast over our radio that there had been a car involved in a theft, two subjects occupying a light colored Cadillac, a theft from the Capitol Wholesale and Jewelers. They said it would be two white males in the car and the car bearing a white or a black and white tag.

"Q. All right. Now, did you have occasion to see these individuals when they stopped their car?

"A. Yes, sir.

"Q. Now, which one was driving the car when you first observed them?

"A. Brown was driving.

"Q. Now, where was the defendant, Ronald Crane?

"A. He was in the passenger's seat in the front.

"Q. Now, what kind of a car was this?

"A. It was a Cadillac."

On cross examination, he further testified concerning the search:

"Q. Mr. Ward, I want you to tell the Jury exactly what occurred relative to your radio information or any information that these two men were coming through your County in a Cadillac or describe the information and who related it to you.

"A. The broadcast came over the radio that Capitol Wholesale Jewelry had just had two subjects take—at that time, they said several trays of diamonds and leave there in a white or a light colored Cadillac and was last seen going west on the Bypass.

"Q. They said it was a white Cadillac.

"A. Light colored.

"Q. Light Cadillac.

"A. Yes, sir.

"Q. And what else did they tell you besides that?

"A. They said it would be bearing a black and white tag and occupied by two white men.

.     .     .     .     .     .

"Q. And you didn't have any description of the men that you were looking for except that they were white men. Is that right?

"A. Two white men.

"Q. On the basis of that you went in there and made the search of these two men?

"A. After we got to them we called back for another positive check or description of the subjects, including the clothing, and we received it back and the description fit the two subjects.

"Q. But, this was after you had made your search and found the rings—

"A. No, sir. That was before."

Justice Bloodworth sets out the law applicable to the facts of this case in his scholarly opinion in *Daniels v. State*, 290 Ala. 316, 276 So.2d 441 (1973). We hold the above testimony sufficient to establish probable cause to search without a warrant under the particular circumstances of this case. See: *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A. L.R. 790 (1925).

## II

Appellant contends the trial court committed reversible error in admitting into evidence a photograph of the stolen rings without proper authentication. The record shows the following sequence:

"Q. I show you State's Exhibit No. 15. Will you look at that and identify that for the record, please?

"A. This is a photograph of the diamonds taken at Police Headquarters after they had recovered them and I viewed them at Police Headquarters and this paid here.

"Q. Were these the diamonds that were missing from your store on August 16th, 1972?

"A. I would say that they were. Yes.

"Q. All right. Did you examine those diamonds on that day and date?

"A. Yes, I did.

"Q. Did you determine that those were the diamonds?

"A. Yes.

"Q. We offer State's Exhibit—does this correctly and accurately depict the diamonds at the time that you saw them?

"A. This is a very technical question that you have asked me on this. It is difficult to look at a photograph and correctly identify the diamonds.

"Q. Did you look at the diamonds on the display?

"A. Yes.

"Q. And these are the diamonds—

"A. Yes. These are the diamonds.

"Q. We offer State's Exhibit No. 15 into evidence.

"MR. LOWERY: We object on the grounds that they haven't established a —

"THE COURT: The objection is taken under advisement.

"MR. LOWERY: All right, sir."

■ The State next proceeded to have the witness identify and authenticate each of the fourteen tags which were previously attached to the rings. The fourteen exhibits were then offered into evidence along with Exhibit No. 15 (the photograph) and the following occurred:

"Q. We again offer State's Exhibits 1 through 14 and these were the diamonds in this photograph?

"A. Yes.

"Q. And State's Exhibit No. 15.

"MR. LOWERY: We renew our objection.

"THE COURT: I believe we accepted 1 through 14 already into evidence—

"THE REPORTER: No, sir.

"THE COURT: We have not. They are received in evidence—1 through 15, now. Cross-Examination?

"MR. LOWERY: Do you overrule our objection, Your Honor?

"THE COURT: Yes. Overruled and received."

There is no question concerning the admissibility of Exhibits No. 1 through 14.

They were properly identified, authenticated, were relevant and material. The photograph (Exhibit No. 15) was illustrative of the testimony of witness Sexton concerning the rings. The objection to Exhibit No. 15 apprised the court of no ground upon which to exclude it from evidence. In its incomplete form, it was nothing more than a general objection and was taken under advisement by the trial court. The first objection to Exhibits No. 1 through 14 was on the ground that no proper predicate had been established. After a predicate had been established for the tags to be admitted, they along with the photograph were combined in one offer to be introduced into evidence. The defense then merely stated, "We renew our objection." Such procedure will not suffice to put a trial court in error.

■■ The photograph was sufficiently authenticated, in our opinion, and even had it not been, its admission would have constituted only harmless error under Supreme Court Rule 45. Courts take judicial knowledge that photographs are generally relied upon for depicting the resemblances of persons, objects, things and places and when verified by evidence, extrinsic of the photograph, they are admissible if they tend to shed light on, strengthen or illustrate the truth of other testimony. *McKee v. State*, 253 Ala. 235, 44 So.2d 781 (1950); *King v. State*, 43 Ala.App. 628, 198 So.2d 308 (1967); *Cook v. State*, 52 Ala.App. 159, 290 So.2d 228 (1974). We hold that the photograph met the above test and its admission did not constitute reversible error.

### III

■ Refused charges 1, 13 and 14 were affirmative charges and properly refused. Refused charge 16 was substantially and adequately covered in the trial court's oral charge and in given charges requested by the appellant. *Morrow v. State*, 52 Ala. App. 145, 290 So.2d 209, cert. denied 292 Ala. 743, 290 So.2d 213 (1973).

The Circuit Clerk's return to this Court's writ of certiorari shows a corrected judgment entry establishing that there was a proper adjudication of guilt by the trial court after receipt of the verdict of the jury.

We have reviewed the record as required by law and find no error which would be prejudicial to the rights of the appellant.

Affirmed.

TYSON, HARRIS, and DeCARLO, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

CATES, P. J., not sitting.