BOOKOUT, Judge.
Robbery; sentence: twelve years imprisonment.
On October 12, 1976, at approximately 3:30 p. m., Sheila Ann Sullivan was robbed at the Coin-Way Laundry on Broad Street, Mobile, by three black males, one wielding a sawed-off shotgun. The robbers fled with Ms. Sullivan’s black purse which contained $18 in addition to various personal effects.
Officer George Williams of the Mobile Police Department arrived on the scene shortly after the robbery. He took a description of the suspects, the stolen property, and a car seen leaving immediately after the robbery which could have been the get *770 away vehicle. It is this information and subsequent events that form the basis of this appeal.
Maurice Brooks testified that between 3:30 and 4:00 p. m. of the afternoon of the crime he observed a red Ford with a black top with four black occupants pass his home. The car was travelling at an excessive speed (away from the scene of the robbery) and ran a stop sign. His observation was a few blocks away from the scene. Additionally, he saw some material discarded from the car. He retrieved the material and attempted to follow the car. After an unsuccessful chase, he called the police, reported the incident, and upon their arrival turned the material over to them. Later that evening, Ms. Sullivan identified these items as hers.
Agent John M. Legg of the Alabama Alcoholic Beverage Control Board heard a police radio dispatch of the robbery and a description of the suspects and car. Knowing that his office was very close to the laundromat and on learning of the general direction of travel of the vehicle, he and his partner began to patrol the vicinity. They spotted appellant’s vehicle, stopped it, identified themselves as officers, and informed appellant that he was a suspect in a robbery. Legg then conducted a brief search of the car and discovered a black purse and a sawed-off shotgun. He turned the items over to the police. Later that evening, Ms. Sullivan identified the purse as hers and the shotgun as the one used in the robbery. She also positively identified the three passengers as the robbers. She did not identify appellant (the driver of the car) as one of the robbers who came into the laundromat.
I
Appellant contends that the introduction into evidence of testimony describing a sawed-off shotgun, a black purse, and money allegedly stolen from the victim found during a search of his vehicle was erroneous in that it was the product of an illegal search as no probable cause and exigent circumstances existed to place the search and seizure within the exception to the warrant requirement of the Fourth Amendment. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We need not discuss both elements of the Chambers exception as appellant objected at trial and directs his attention here to only that of probable cause.
On voir dire examination, ABC Agent John M. Legg testified that on October 12, 1976, around 3:30 or 4:00 p. m. he was in his office located in close proximity to the scene of the robbery and overheard a police radio dispatch detailing the robbery. To the best of Legg’s recollection, the initial dispatch described the vehicle as a black Chevrolet with a red top occupied by three black males. The dispatch further indicated the general direction of travel. (Appellant, at trial, did not challenge the informational basis of the dispatch, nor request to examine the person who gave the description of the vehicle to the police.) Having been notified of the commission of the felony and being within close proximity to the scene, Legg and his partner, Harry Curly, patrolled the vicinity in an attempt to locate the suspect vehicle.
Legg testified that, within three and one-half to four minutes after receiving the dispatch, he noticed a car extremely similar to the description given over the dispatch although it was a red Ford with a black top containing four black males. Furthermore, Legg testified that during the course of events he did not observe any other “black over red or red over black automobiles” that resembled the description broadcast as closely as appellant’s.
In answer to defense questions, Legg stated that shortly after locating the vehicle, he observed the two suspects sitting in the back seat glancing back in his direction, and the suspect in the front passenger side was making movements as if he was hiding something under the seat. Furthermore, Legg testified that after this observation, which occurred over the course of several city blocks, he turned on his blue light and siren. The appellant’s car slowed but did not stop. After approximately four blocks, Legg cut in front of the appellant who then *771 stopped. Legg identified himself and informed the passengers that they were suspects in a robbery. He then requested appellant and the passenger in the front seat to step out of the car, after which he searched under the front seat and discovered the black purse and sawed-off shotgun. Additionally, a sum of money was discovered on Timothy Minor, one of the suspects, although the record does not reflect the amount.
Legg also testified that while under observation the vehicle did not speed, but did move at least one time in an erratic manner apparently “to try to get out of my line of sight.” After stopping the car, Legg received the correct description of the suspect vehicle from his office which was in telephone contact with the police.[1]
In Owens v. State, 51 Ala.App. 50, 61, 282 So.2d 402, 413, cert. denied, 291 Ala. 794, 282 So.2d 417 (1973), we stated:
“The measure of the legality of warrant-less searches and seizures is whether the seizing officers have probable cause for believing that the automobile they stop contains stolen property, illegal contraband or other fruits of a crime. . [T]he officers . . could rely on the radio broadcast but the subsequent determination by any court as to probable cause must necessarily turn on all the circumstances giving rise to the police dispatch. . . .” (Citations omitted.)
Following this reasoning, the Alabama Supreme Court in Paschal v. State, Ala., 365 So.2d 681, 682 (1978), stated that without evidence of the underlying circumstances which give rise to the radio dispatch, the mere fact that a radio dispatch was given does not provide sufficient probable cause for a warrantless search of a vehicle. That point must be properly raised in the trial court, which was not done here as in Paschal. In any event, the facts in this case indicate that Agent Legg was acting with sufficient probability to detain and search appellant’s vehicle.
Agent Legg’s voir dire testimony indicates an extremely close proximity in location to the robbery as well as a close proximity in time between the commission of the crime, the initial radio dispatch, and observation of the appellant’s vehicle. Agent Legg testified that there was no more than a three and one-half to four minute interval between the dispatch and the initial observation. Had the proximities of location and time been more remote, a stronger argument for lack of probable cause would be present. However, these two facts coupled with the fact that Agent Legg was aware that a robbery had been committed in the vicinity and that no other car with the same color combination was seen in that vicinity establish the requisite probable cause for the stop and search. Although the initial radio dispatch description stated the number of suspects to be three, the make of the car to be a Chevrolet, and its color combination to be red over black, this does not negate the finding of probable cause when the facts are weighed collectively. We have so held in similar cases involving misdescription of automobiles. Campbell v. State, Ala.Cr.App., 354 So.2d 325 (1977); Herrin v. State, Ala.Cr.App., 349 So.2d 103, cert. denied, Ala., 349 So.2d 110 (1977). Consequently, the trial court properly denied appellant’s motion to suppress testimony concerning the stop and search of the vehicle.
II
Appellant asserts as his second ground for reversal that the conduct of the district attorney and chief investigating officer in full view of the jury during appellant’s examination of his only witness was reprehensible and prejudicial.
Appellant called as a witness Frank Marshall a co-defendant who had pled guilty to the robbery. After his testimony, and after appellant had rested, the following colloquy occurred outside the presence of the jury:
“MR. SCHEUERMANN: Judge, my first motion, I move for a mistrial at this point because the District Attorney and Offi *772 cer — and Officer Bowman were laughing when the last witness was testifying while the jury was in — in the courtroom. And, if the District Attorney doesn’t— don’t (sic) want to stipulate to the fact they were laughing I would like to—
“MR. PIERSON: I’m certainly not going to stipulate to that, Mr. Scheuermann. I was smiling, you bet.
“MR. SCHEUERMANN: Okay, I’ll call— I’ll call Officer Bowman to testify on my motion to that effect, Your Honor.
“THE COURT: Well, there was nothing audible about it, Mr. Scheuermann.
“MR. SCHEUERMANN: I could see it, Judge, and I could hear it.
“MR. PIERSON: I was smiling, I admit, but I wasn’t laughing.
“THE COURT: Well, the Court observed what happened and I saw them smiling. I didn’t hear them audibly laughing. I’m going to deny your motion, Mr. Scheuer-mann.”
In Harrison v. State, Ala.Cr.App., 340 So.2d 849, 852, cert. denied, Ala., 340 So.2d 854 (1976), this court stated:
“Our appellate courts have held that although unfounded inflammatory remarks • by the prosecution may result in irreparable prejudice, no iron-clad rule exists by which the prejudicial qualities of improper remarks of counsel can be judged. Such depends on the issues, parties and general circumstances of the particular case. .
“No one has a better vantage point from which to observe the parties, the issues and the general circumstances than the trial court and great weight should be accorded its determination. . . . ”
(Citations omitted.)
A review of the above-quoted portion of the record illustrates that the trial court observed the demeanor of the district attorney and chief investigating officer. Although noting that both men smiled during the testimony, which the district attorney admits, the trial court did not find it so prejudicial as to grant appellant’s motion for a mistrial. Such matters are within the sound discretion of the trial court which will not be overturned unless palpably erroneous. Hurt v. State, Ala.Cr.App., 361 So.2d 1163, 1165 (1978). The only mention in the record of the incident is the above quoted colloquy which consists only of arguments between counsel as to what may or may not have occurred. The trial judge related what he observed and overruled the motion. From this state of the record, we are unable to find that the trial judge abused his discretion in so ruling.
AFFIRMED.
All the Judges concur.

. See: Crane v. State, 55 Ala.App. 619, 318 So.2d 315 (1975).