[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 248 
Michael Thatch was indicted for the offense of robbery in the first degree under § 13A-8-41, Code of Alabama 1975. A jury in Madison County convicted him of robbery and he was sentenced to life without parole, after it was determined that he was a recidivist under § 13A-5-9, Code of Alabama 1975.
On January 5, 1980, Alex Aqwunobi was the night desk clerk at the Catalina Motel in Huntsville, Madison County Alabama. On that occasion Aqwunobi was working alone and around 1:40 A.M. two men came into the office. One of them was wearing a red mask and carrying a butcher knife; the other, whom Aqwunobi identified as the appellant, was wearing a brown jacket and did not have a mask. The one with a mask and a butcher knife made Aqwunobi lie on the floor. According to the witness, the second man, or the appellant, made sure that Aqwunobi did not move. Also, during this period, the witness testified that he was "punched" in the neck with the knife and told that they would "cut [him] to pieces."
After the robbery, the two men ran out of the motel and entered a car parked in front of the office. The witness described the car as "red at the bottom and has a white top." According to Aqwunobi, two or three hundred dollars were taken, along with his General Electric portable television. Aqwunobi stated that some of the bills were separated from the coins, which were wrapped in rolls. After the robbery, the witness testified that he called the police, and, upon their arrival, he gave them a description of the two men and the car they used when they left the motel.
Officer Phillip Kramer of the Huntsville Police Department testified that, on January 5, 1980, at approximately 1:40 A.M., he and Officer Mullins proceeded to the Catalina Motel in response to a radio dispatch. On their arrival, Officer Kramer received a description from Aqwunobi of the two men who had robbed him and a description of their vehicle. Kramer testified that after receiving the descriptions he then relayed them by radio to other police units.
During cross-examination, Kramer stated that Aqwunobi had at first described the car used by the two men as a '64 Ford, but within a minute he changed his mind and told them it was a Cadillac.
Officer Steve Lowhorne of the Huntsville Police Department testified that about 1:40 A.M., on January 5, 1980, he and Officer Warden heard on their patrol car radio that an armed robbery had just taken place at the Catalina Motel, and that the people involved were in a white over red, late model vehicle. About a mile or a mile and one-half from the Catalina Motel they saw an older model vehicle, white over red, which they subsequently stopped. There were two black males in the vehicle, one of whom, who was the passenger in the vehicle, Officer Lowhorne identified as the appellant. Subsequently, Officer Della-Calce, an assistant, arrived. *Page 249 
Officer Della-Calce said he saw the appellant reaching behind him (appellant) and pushing something under the seat. At that point, Della-Calce told the appellant to step out of the car and, after repeating the instruction three times, Della-Calce went around and opened the door on the passenger's side and appellant stepped out. The seat was searched and a butcher knife was found behind the back seat. The appellant was searched at that time for weapons and a can of mace was found on his person. The appellant was subsequently advised of his constitutional rights. The driver of the vehicle was searched and large amounts of change and bills were found on his person.
On the back seat of the stopped vehicle, Officer Lowhorne saw a portable television set. While Lowhorne was standing near Officer Della-Calce's patrol car, the appellant asked if Lowhorne would hand him (the appellant) his coat. Lowhorne subsequently opened the door of the car and retrieved the coat, but, before handing it to the appellant, he "checked the pockets." In one of the coat pockets Lowhorne found a roll of money; he then informed the appellant that he could not give him his coat.
The stopped car was inventoried and later impounded. During the trial, Officer Della-Calce testified that a "black and white G.E. T.V., a brown plastic, imitation leather jacket, a red toboggan, and a checkbook type wallet" were found in the car. According to Della-Calce, all the evidence found in the automobile was turned over to Detective Crumrine.
Jim Crumrine of the Huntsville Police Department assisted Officers Della-Calce and Lowhorne in the search of the vehicle. Crumrine identified the vehicle as being a 1967, white over red Cadillac. During the trial, all the items found in the car were identified by Officer Crumrine and placed into evidence. Further, he said that a "wad of wrapped bills of the approximate value of seventy or eighty dollars" was found in the jacket pockets.
On January 7, 1980, Crumrine conducted a "photographic display" for the victim, Aqwunobi, of approximately six black-and-white photographs showing black males. Upon seeing the photographs, Aqwunobi "immediately" picked the photograph of the appellant. According to Crumrine, no one other than he and Aqwunobi were present at the time the photographic display was shown to the victim.
At the end of Crumrine's testimony, the State rested its case and appellant made a motion to exclude the State's evidence on the grounds that a prima facie case of robbery in the first degree had not been shown. The motion was denied and the appellant called only two witnesses: his wife, Mamie Sue Thatch; and Ricky Joe Robinson.
Mamie Sue Thatch testified that neither she nor her husband owned a coat similar to the one introduced at trial. She also said she did not own a butcher knife like the one in evidence, nor had she seen her husband with such a knife.
Ricky Joe Robinson testified that he robbed the Catalina Motel on January 5, 1980, and that Michael Thatch was not the person who participated in the robbery with him. He testified that he did not know the name of the individual who participated in the robbery, but he had seen him at the "VFW Club." Also, he testified that, after the robbery, he stopped at the "Motel 6," and the person who had assisted him in the robbery got out of the car. On leaving the "Motel 6" he saw the appellant at a quick stop convenience store hitchhiking. According to Robinson, he gave the appellant a ride and, shortly after, they were stopped by the police.
 I
The appellant contends that the trial court committed reversible error in overruling his motion to suppress because the officers did not have probable cause to stop the vehicle; thus, he maintains, the resulting search and seizure were illegal.
The law is well established that an investigatory detention of a motor vehicle is constitutionally permissible where the officer stopping the car has specific and articulable reason to believe criminal activity has *Page 250 
occurred or is going to occur. Butler v. State, Ala.Cr.App.,380 So.2d 381; Goodman v. State, Ala.Cr.App., 356 So.2d 691;Campbell v. State, Ala.Cr.App., 354 So.2d 325; Herrin v. State, Ala.Cr.App., 349 So.2d 103; Spurlin v. State, 46 Ala. App. 485,243 So.2d 758.
The evidence in the present case shows that the officers had received a radio call about the robbery describing the get away car and the two black males involved. Within minutes after the robbery, the officers saw a car meeting the description of the escape vehicle approximately a mile or a mile and one-half from the motel and headed away from the motel. At this point, although the officers may not have had probable cause to arrest the occupants of the car, they had sufficient information to enable them to stop the car, pat down its occupants, and investigate. McClendon v. State, Ala.Cr.App., 341 So.2d 174. The officers knew that a felony had been committed and that the automobile they had stopped fit the description of the get away car. Further, the car that was stopped was in the vicinity of the motel where the robbery had occurred. Crane v. State,55 Ala. App. 619, 318 So.2d 315; Butler v. State, supra; McClendonv. State, supra. See also, Bagony v. City of Birmingham, Ala.Cr.App., 371 So.2d 80.
The strength of the information needed for an "investigatory detention" is much less than that required for an arrest and search. See Bagony v. City of Birmingham, supra.
In order to determine whether the trial court was in error in overruling the motion to suppress, we must consider not only the evidence adduced on the motion itself, but also the trial testimony that came afterwards. Carroll v. United States,267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543: DiBella v. United States,369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614. Therefore, if the record discloses "articulable facts" which were available to the officer at the time of the stopping, then there was probable cause for the investigatory stop. Based on the record before us, it is our judgment that the investigatory stop was based upon reasonable grounds, and the trial court was correct in overruling the motion to suppress. See Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
Having determined that there was probable cause for the investigatory stop, we must now consider whether there was probable cause for the subsequent arrest and search. It is clear that, once the get away car had been stopped, additional evidence was found to create probable cause. Officer Lowhorne testified that the black male driving the car was asked to step out and, during a pat-down, was found with a large amount of change on his person. Also, Lowhorne saw a black and white portable TV in the car which matched the description of the one taken in the robbery.
Officer Della-Calce testified that when he arrived he saw the appellant trying to stuff something in the seat behind him. After the appellant was ordered from the car, the officer found a butcher knife similar to the one used in the robbery. The appellant then asked Lowhorne to hand him his coat, whose appearance coincided with the victim's description of the robber's coat. Prior to handing the coat to appellant, Lowhorne searched the pockets and found a large roll of money. Under these circumstances, there was probable cause for the arrest and the subsequent search. The contemporaneous search which resulted in the seizure of the knife, mask, jacket, and T.V. was constitutionally permissible. Preston v. United States,376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Chimel v. California,395 U.S. 752, 89 S.Ct. 2034, 20 L.Ed.2d 685. See also SouthDakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000.
 II
Appellant complains that the trial court committed reversible error when it admitted into evidence appellant's statement alleged to have been made before he had been given his Miranda
rights. The statement from the record reads:
"Q. Did you ask Michael Thatch any questions? *Page 251 
"A. No, sir, I did not.
"Q. Did he say something to you from the patrol car?
"A. Yes, sir. He asked —
"MR. McDANIEL: I object, Judge; anything he said.
"THE COURT: Overruled.
"Q. What did he say or what did he ask you?
 "A. He asked me if I would hand him a brown coat that was in the car. And I asked him where the coat was, he said it was in the back seat."
Also in the record we find the following:
 "Q. Steve, did you or any other officer, Della-Calce, any officer in your presence advise the Defendant, Michael Thatch, of his Constitutional Rights?
 "A. Yes, sir. Officer Della-Calce advised him of his rights in my presence.
. . . .
 "Q. Do you recall Officer Della-Calce asking him whether or not he understood those rights?
"A. Yes, sir.
"Q. Do you recall the Defendant's response?
"A. No, sir, I do not recall his response.
 "Q. Okay, now, was this before or after he said anything to you?
 "A. This was directly after Officer Della-Calce frisked the subject in front of the vehicle.
"Q. That's when he advised him of his rights?
"A. Yes, sir.
 "Q. That was before the Defendant said anything to you?
 "A. Yes, sir. At that time I had not said one word to the Defendant other than asking him to get out of the car.
 "Q. Now, if you will, tell us what, if anything, he said to you about the jacket?"
Our examination of the transcript reveals that the statement made by the appellant about his coat was voluntary. No threats, force or intimidation were used to get the appellant to ask for his coat or to tell the officer it was on the back seat. In our judgment, the statement was voluntary and was properly admitted even though it was not a part of the res gestae.
 III
It is insisted that the trial court committed reversible error when it limited the cross-examination of the victim-witness.
The instance complained of, in pertinent part, appears as follows:
From the record:
 "Q. Well, Mr Aqwunobi, you told Officer Kramer and Officer Mullins, because they wrote it in their reports, that this smaller individual who you have identified as Michael Thatch, you told them that he was, `heading for the car when you first got a look at them.' Now, do you want to back off of that any or is that your testimony here today?
 "MR. MORGAN: I object; that's not what he testified to and he has answered that question about three times already.
 "THE COURT: Well, I think the Jury heard his testimony and understood what he said about where he was going."
The control or the limiting of cross-examination is a matter addressed to the sound discretion of the trial court. Atwell v.State, Ala.Cr.App., 354 So.2d 30. Although the right to a thorough and sifting cross-examination is fundamental, it does not entitle a party to repeat questions that have already been fully answered. Proctor v. State, Ala.Cr.App., 331 So.2d 828.
In the present case, the record indicates that the matter complained of had been pursued on cross-examination by the defense attorney before the cited instance occurred. Therefore, the trial court did not abuse its discretion by limiting the repetitious examination.
 IV
Appellant maintains that the State failed to prove a prima facie case of robbery in the first degree.
Robbery in the first degree is defined in § 13A-8-41, Code of Alabama 1975, as follows: *Page 252 
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
 "(c) Robbery in the first degree is a Class A felony."
Section 13A-8-43, reads as follows:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance, or
 "(2) Threatens the imminent use of force against the person of the owner of any person present with intent to compel acquiescence to the taking of or escaping with the property."
The evidence presented by the State was sufficient to support the verdict. The victim positively identified appellant as one of the two black men who, using a butcher knife, robbed him of a sum of money and a television set by force. At trial, the victim identified not only the television set that was taken but also the jacket worn by appellant and the red ski mask worn by his companion during the robbery.
The two police officers identified appellant as the passenger in the car; they also identified the television set, butcher knife, and brown coat, as well as large amounts of change and bills, as the contents of the vehicle. Further, the officers testified that they stopped the vehicle occupied by appellant and his companion only minutes after the robbery in the vicinity of the crime scene.
Moreover, the jury was justified in finding that appellant was involved in the robbery and shared in its fruits. Rayfordv. State, 53 Ala. App. 86, 297 So.2d 409; Raybon v. State,55 Ala. App. 143, 313 So.2d 570; McCovery v. State, Ala.Cr.App.,365 So.2d 358.
Under the foregoing facts, we are of the opinion that the State presented a prima facie case of robbery in the first degree and the question of appellant's guilt was properly submitted to the jury.
 V
Finally, appellant insists that the Alabama Habitual Felony Offender Act is unconstitutional and that his prior convictions, which were invoked to enhance punishment under that Act, were not properly proved at the sentencing hearing. This court, in Watson v. State, Ala.Cr.App., 392 So.2d 1274
(1980), determined that Alabama's Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, is constitutional.
In Highsmith v. State, 55 Ala. App. 272, 314 So.2d 874, this court stated that the proper method for proving a prior conviction is by introducing a certified copy of the minute entry. That entry must affirmatively show that defendant was represented by counsel at the time of the prior conviction.Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.
In the present case, the record shows that the jury returned a verdict on May 22, 1980. On May 29, 1980, the court ordered that appellant be notified of his prior convictions upon which the State intended to rely at the sentencing hearing.
At the sentencing hearing on June 12, 1980, evidence was presented through certified copies of the judgment entries showing not only that appellant had three prior felony convictions, but also that appellant, at the time of each conviction, was represented by counsel. In addition to this evidence, the State presented the testimony of William R. Robinson, an employee of the State Board of Pardons and Paroles, who *Page 253 
testified that he had prepared a preliminary report for the Board which reflected appellant's prior offenses. Appellant admitted that he was the same Michael Thatch or Willie Davis who committed the felonies shown on the certified copies of the judgment entries submitted by the State. He also admitted that he was the same Michael Thatch or Willie Davis who was convicted of robbery in the case under consideration.
Under these facts we find that the prior convictions were properly proved. No conflict with Burgett v. Texas, supra, is shown.
We have examined the record and find no error prejudicial to the appellant; therefore, the judgment of conviction by the Madison Circuit Court is due to be affirmed.
AFFIRMED.
All the Judges concur.