McMILLAN, Judge
(dissenting).
The majority opinion has ignored or erroneously applied the criteria for determining the validity of an investigatory stop. The record in the present case clearly indicates that the arresting officer failed to demonstrate the requisite “particularized suspicion” of the appellant prior to the investigative stop. It is clear that the Fourth Amendment applies to seizures of the person “including brief investigatory stops such as the stop of the vehicle here.” *1203 United States v. Cortez, 449 U.S. 411, at 417, 101 S.Ct. 690, at 694, 66 L.Ed.2d 621 (1981). See also Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Worthy v. State, 473 So.2d 634, 637 (Ala.Cr.App.1985); Vogel v. State, 426 So.2d 863 (Ala.Cr.App.1980), affirmed, 426 So.2d 882 (Ala.1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1982); Johnson v. State, 406 So.2d 446 (Ala.Cr.App.1981).
“ 'To justify governmental intrusion upon the Fourth Amendment rights of a private citizen, specific and articulable facts must be present which, when taken together with rational inferences from those facts, would reasonably warrant such intrusion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sterling v. State, 421 So.2d 1375 (Ala.Cr.App.1982). In situations such as the case at bar, we must ask "... [W]ould the facts available to the officer at the moment of the seizure ... ‘warrant a man of reasonable caution in the belief that the action taken was appropriate?” Terry v. Ohio, supra; Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).”’
White v. State, 479 So.2d 1368, 1375 (Ala.Cr.App.1985). (Emphasis added.) See also Sterling v. State, 421 So.2d 1375, 1379 (Ala.Cr.App.1982); Traylor v. State, 439 So.2d 178, 181 (Ala.Cr.App.1983). “Although Terry v. Ohio, supra, was factually concerned with the stops of pedestrians, the concept of the investigatory stop has been extended to stops of vehicles by subsequent decisions of the United States Supreme Court and the courts of this state.” Smith v. State, 472 So.2d 677, 682 (Ala.Cr.App.1984).
“The degree of reasonable suspicion necessary to make a stop was articulated in United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981): ‘[b]ased upon the whole picture the determining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” Crawley v. State, 440 So.2d 1148, 1149-50 (Ala.Cr.App.1983) (emphasis added).
“ ‘In order to be valid, an investigatory stopping or detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. The detention and investigation may not be based on a peace officer’s unsupported intuition, subjective feelings or suspicions, mere hunch, or good faith, but it must be based on the objective perception of events, without particularization as to a specific crime. There must be a rational suspicion on the part of the officer that some activity out of the ordinary is taking or has taken place, some indication to connect the person under suspicion with suck activity, and some suggestion that the activity is related to a crime.’ 6A C.J.S. Arrests Section 40.”
Spradley v. State, 414 So.2d 170, 173 (Ala.Cr.App.1982). See also Smith v. State, supra.
“The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes of patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.
[[Image here]]
“The second element contained in the idea that an assessment of the whole picture must yeild a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the court in Terry v. Ohio, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], said that ‘[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court’s Fourth Amendment juris *1204 prudence.’ Id., at 21, n. 18 [88 S.Ct. at 1880, n. 18]. ... See also Brown v. Texas [443 U.S. 47 (1979)] at 51 [99 S.Ct. 2637, 2640, 61 L.Ed.2d 357]; Delaware v. Prouse, [440 U.S. 648 (1979)], at 661-663 [99 S.Ct. 1391, 1400-1401, 59 L.Ed.2d 660]; United States v. Brignoni-Ponce, [422 U.S. 873 (1975)] at 884 [95 S.Ct. 2574, 2581, 45 L.Ed.2d 607].”
United States v. Cortez, supra, 449 U.S. at 418, 101 S.Ct. at 695 (some emphasis in Cortez; additional emphasis added.) See also United States v. Aldridge, 719 F.2d 368 (11th Cir.1983).
The record indicates that D.J. Spear, an officer with the Montgomery Police Department, testified that he received a call regarding the robbery at the First Alabama Bank on Woodley Road, which informed him that the suspect was a black male, about five feet, six inches to five feet eight inches tall, weighing 140 pounds, and that he was wearing a brown jacket or a fatigue jacket. He further testified that thereafter he observed a blue Ford with two black males inside, pulling out of a day care center parking lot on Woodley Road. He testified that the driver of the vehicle exited the van and stated that a man, later determined to be the appellant, was in his car and had a “pile of money laying in” his floorboard. At trial, the arresting officer stated: “Well, they gave a description [sic] one black male, okay? And if any black male moves in the territory after a bank robbery I’m going to stop him” The officer further acknowledged that when he stopped the blue Ford he had no knowledge that a car was involved in the crime, nor was he aware that two persons had been involved in the robbery. He further testified that when he first observed the car, it was pulling out of the driveway of a day care center parking lot and that there was nothing unusual about the appellant’s or the driver’s appearance or behavior. Moreover, he testified that he would have stopped anyone in the general area in which the offense had taken place “that moved ... even if he [did not] fit the description.”
The record in this case does not support the requisite premise that the arresting officer had a particularized suspicion that the individual being stopped was engaged in the criminal activity. The counsel for the State, as well as the counsel for the appellant, agreed that the testimony of the arresting officer raises questions regarding safeguards of the appellant’s Fourth Amendment rights. The appellee apparently acknowledges a concern for the Fourth Amendment protections regarding the investigatory stop in the present case by stating in his brief:
“[A]ppellee admits that the arresting officer’s statement, ‘that if any black male moves in the territory after a bank robbery, I am going to stop him’ is indeed offensive, and probably indicates the propensity by this officer to disregard the fourth amendment prohibition against unreasonable searches and seizures. ...”
The record reveals that the arresting officer’s sole basis for the stop was the radio dispatch, which provided the officer with only the description of a lone black man. Additionally, the record indicates that the description therein of the perpetrator was not, used to apprehend the appellant. See United States v. McLeroy, 584 F.2d 746 (5th Cir.1978) (wherein none of the appellant’s actions observed by the police, nor the informant’s tip, were sufficient to create a reasonable suspicion of criminality). Cf. McClendon v. State, 341 So.2d 174, 177 (Ala.Cr.App.1976) (“[a] report received over police radio, that persons fitting a certain description were travelling in a certain described automobile are wanted in connection with a felony, is sufficient probable cause to stop such vehicle and make an investigation. Crane v. State, 55 Ala.App. 619, 318 So.2d 315 (1975). Also see Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).") White v. State, 479 So.2d 1368, 1375 (Ala.Cr.App.1985) (“A police officer may stop a vehicle based on information received from a dispatch. He is justified in making the stop if, after receiving the description of the vehicle, he observes the vehicle in the general vicinity of the offense soon after the offense has been committed”) (emphasis added).
*1205 The law enforcement officer’s dedication, courage, and committment to duty are to be commended. However, the criteria previously enunciated for determining the validity of an investigatory stop, the absence of a particularized suspicion as to the appellant, and the Fourth Amendment protection as interpreted by the United States Supreme Court compel a difficult result. The appellant’s motion to suppress should have been granted by the trial court. Thus, I respectfully dissent from the majority opinion.